January Term, 1882, No. 305.                    April 7th, 1882.

# Howard's Appeal.

1. A testator left real estate to his executors in trust to sell "in fee simple" for cash, or on credit, or on ground-rent, at such times and in such parts as to them should seem best, to invest the proceeds, and pay over the net income to his daughter, A., for life, for her sole and separate use, and upon her death to such child of A. and issue of deceased child as she should appoint, and, in default of appointment, to the children of A. then living and the issue of deceased children equally; and, for want of such child or issue, to such persons as would under the intestate laws of Pennsylvania be entitled if A. had died seised in fee unmarried and intestate. The executors conveyed a portion of the real estate, reserving a ground-rent. A. died without issue, leaving as next of kin a sister, B., and C., the daughter of her deceased brother. By agreement of partition the ground-rent was conveyed to C., who died a minor, unmarried, leaving a mother, D., who was not of the blood of the testator. Held, that D. took a life estate in the ground-rent, and that the fee was vested in B. and her heirs.

2. The option given to the executors to let on redeemable ground-rent, which, in point of fact, they exercised, prevented the will from working an equitable conversion of the real estate.

3. In order to work such a conversion, the direction to sell for cash must be absolute and unconditional.

4. Burr v. Sim, 1 Wharton, 252, distinguished.

Before Sharswood, C. J.; Mercur, Gordon, Paxson, Trunkey, and Green, JJ. Sterrett, J., absent.

348 SUPREME COURT [*Philadelphia,*]

[Howard's Appeal.]

Appeal of William J. Howard and Sophia B., his wife, from the decree of the Court of Common Pleas No. 2, of *Philadelphia County.*

Bill in equity, by Uriah W. Stokes against William J. Howard and Sophia B., his wife, Charles G. Poulson and Susan A., his wife, and the Provident Life and Trust Company, trustees of the said Susan A. Poulson, to determine whether the said Sophia B. Howard was the life tenant or owner in fee of a certain ground-rent issuing out of land owned by the plaintiff.

The case was heard in the Court below upon bill and answer, from which the facts appeared as follows:

John Angue, Jr., died prior to January 12th, 1848, leaving a will, in which he devised, *inter alia,* to his executors a lot on Spruce Street, in trust, " to sell and dispose of the same in fee simple for cash, or on credit, or on ground-rent, with the usual right or power for the purchasers to extinguish the ground-rents at any time within seven years from the date of the respective deeds, at public or private sale, at such time or times, and in such parts, portions, or lots as to my said executors shall seem best, and thereupon from time to time to sign, seal, execute, acknowledge, and deliver in due form of law all and every such deed or deeds, conveyances and assurances in the law as shall be necessary and proper to grant, convey, and assure the same unto the purchaser or purchasers thereof, his, her, or their heirs and assigns forever, exonerated from all liability for or on account of the application of the purchase-money or ground-rents reserved therefor, and to invest the moneys or proceeds of such sale or sales as soon as may be after receiving the same from time to time in good and secure mortgages as aforesaid, or in such other securities or investments as are or shall be authorized by law as they, my said executors, shall think best." The testator then directed his executors to collect the interest and income from the trust estate, and pay over the net amount to his daughter, Charlotte E. Angue, upon her receipt, during all the term of her natural life, for her sole and separate use ; and, upon her decease, to convey the trust estate to such of her children or their issue as she should appoint ; and upon her decease, in default of appointment, to convey the same to her children and the issue of her deceased children in equal shares, the issue of any deceased child taking the share its parent would have taken if living ; " and for want of such child, children, or issue, then to grant, convey, and assign the same to such person or persons as would under the intestate laws of Pennsylvania for the time being be entitled thereto, in case she, the said Charlotte, had

died seised and possessed thereof in her own right, unmarried and intestate, in such manner and for such quantities of estate as such person or persons would in such case be entitled to."

The executors conveyed a portion of the lot, reserving the ground-rent in controversy unto themselves, " executors and trustees aforesaid, their heirs and assigns, in trust for the uses and purposes mentioned." It was a redeemable ground-rent of $150 per annum.

Charlotte E. Angue survived her father, died intestate and without issue, leaving surviving her as her next of kin a sister, Margaret L. Wilson, and a niece, Anna Maria Angue, who was the child of Albert D. Angue, a son of the testator. The mother of Anna Maria Angue was the defendant, Sophia B. Howard, who was the wife of Albert D. Angue at the time of his death. At the time of the death of Charlotte E. Angue an agreement was made between Margaret L. Wilson and the guardian of Anna Maria Angue, dividing the estate between them, and the ground-rent in question was conveyed by the executors to Anna Maria Angue in fee. She died in March, 1866, a minor, and so seised.

Margaret L. Wilson died in January, 1871, a widow and intestate, leaving one child, the defendant, Susan A. Poulson. The Provident Life and Trust Company is trustee for her, under a deed of trust made by her in anticipation of her marriage with Charles G. Poulson.

Sophia B. Howard is not of the blood of the testator. She claimed to inherit from her daughter in fee, which claim was resisted by the trustee of Mrs. Poulson.

The owner of the ground, wishing to extinguish the rent, filed his bill for the purpose.

The Court below decreed, *inter alia*, "that the right and title of the parties defendants herein to the yearly ground-rent of one hundred and fifty dollars ($150) per annum, specified in the said bill at the time of filing thereof, was vested in them respectively in manner following, and not otherwise; that is to say, in Sophia B. Howard, one of the defendants, for her life, and the remainder thereof, in fee simple, to come into possession after the death of the said Sophia B. Howard, in the said the Provident Life and Trust Company of Philadelphia, their successors and assigns, in trust for the uses declared in the marriage settlement of Mrs. Susan A. Poulson."

William J. Howard and Sophia B. Howard then appealed, assigning as error the making and entering of the above decree.

*Robert N. Willson*, for the appellants.

There can be no question that if the trust had been to sell the real estate for cash, or on credit alone, the descent would have been broken, a conversion would have been effected, and any person entitled to take any portion of the real estate, taking it as such by election, would have acquired it as first purchaser: Burr *v.* Sim, 1 Wh., 252; Allison *v.* Kurtz, 2 W., 185; Simpson *v.* Kelso, 8 W., 247; Gray *v.* Smith, 3 W., 289; Morrow *v.* Brenizer, 2 R., 185; McClure's Appeal, 22 P. F. Smith, 414.

In the case in hand, the trust was to sell either for cash, on credit, or on ground-rent, but it will be observed there was an out and out devise to the executors, and the manner of taking the consideration was left entirely to their discretion. Besides, the ground-rents which they were authorized to reserve were by the terms of the will to be of a redeemable kind, thus showing an intent on the part of the testator to provide for the conversion of the real estate into personalty at some time, in any event.

Moreover, the ground-rents which might thus be created, by the act and in the discretion of the executors, would not be, and were not, when they actually did come into existence, either the same, or a part of the same estate, which the testator devised to the executors: Skerrett *v.* Burd, 1 Wh., 250; Robb *v.* Beaver, 8 W. & S., 107.

Moreover, it cannot be doubted that it is perfectly competent for a testator, either by express provision, or by an implication which amounts to the same thing, to make a disposition of his real estate which will not be affected by the proviso: Sec. 9, Act April 8th, 1833.

It is contended that, by the concluding sentence of the before-recited clause of the will, the testator directed a final disposition of the property, to which the clause related, entirely independently of any connection with himself as the *stirps* or source from which it came. It is true that the person who was to be treated as the *stirps*, for the purpose of designating those to whom the property, real and personal, was to be assigned and conveyed, was of his blood, but this does not affect the correctness of the assertion that he cut himself off from the line of blood connection with the title by the direction referred to: Johnson's Appeal, 7 Norris, 346.

*J. B. Townsend*, for the appellees.

Anna Maria Angue was the intestate. She derived this property by the provisions of the will of her grandfather, John Angue, as his devisee, or by descent from her aunt, Charlotte Angue. It is not material for the purposes of this

[Howard's Appeal.]

inquiry to determine which, as her mother is not of the blood of either of them, and therefore the mother is clearly excluded by the terms of the 9th section of the Act of April 8th, 1833, unless it can be shown by the record that some changes have been made which oblige the Courts to treat Anna Maria as a purchaser *not deriving title by descent, gift, or devise from an ancestor or other relation.*

It has been settled that a mother cannot inherit from her daughter lands which descended to the latter from her father: Walker *v.* Smith, 3 Yeates, 480; Shippen *v.* Isard, 1 S. & R., 226; Simpson *v.* Hall, 4 S. & R., 337; Bevan *v.* Taylor, 7 S. & R., 397; Baker *v.* Chalfant, 5 Whar., 477; Danner *v.* Shissler, 31 Penna. St., 289; Roberts's Appeal, 39 Penna. St., 417; Walker *v.* Dunshee, 38 Penna. St., 430; McWilliams *v.* Ross, 46 Penna. St., 369.

Whether the mother can take an inheritable estate from the daughter is always solved by the answer to this question: Did the daughter acquire her estate as a volunteer; that is, by gift, devise, or descent from an ancestor or relative, or was she purchaser, acquiring title otherwise? Maffit *v.* Clark, 6 Watts & Sergeant, 262; Hart's Appeal, 8 Barr, 37; Lewis *v.* Gorman, 5 Barr, 165; Parr *v.* Bankhart, 10 Harris, 291; Montgomery *v.* Petriken, 5 Casey, 118; Roberts's Appeal, 3 Wright, 417; Kinney *v.* Glasgow, 3 P. F. Smith, 141; Scott's Intestate Law, 289.

The power in the will authorized and justified the exchange of one piece of realty into another piece of realty, and the new parcel was taken with the impress upon the title that it was taken and held in trust for the same uses and purposes for which the lot was held. It was a substitution of one parcel for another of the same species. That the will also gave a power of conversion into personalty, if the executors chose to exercise it, goes for nothing, as they did not exercise the alternative power. Every heir who takes by descent or gift from an ancestor or relative has as absolute an estate in fee, and therefore as full power to sell and convert as any other owner; and yet, if such heir dies seised of such estate, unconverted, it goes to the relations on the side of that ancestor from whom it came.

So here there was no conversion from realty into personalty, and the course of descent was not altered. There was no mandatory direction that a conversion into personalty should be made.

APRIL 17TH, 1882.—PER CURIAM: The contention of the appellant in this case rests entirely on the assumption that the will of John Angue, Jr., worked an equitable conversion of the lot, the proceeds of which are in controversy, and

that, as a consequence, Anna Maria Angue took as a purchaser, according to the principle of Burr *v.* Sim, 1 Whar., 252. We are of opinion, however, that as there was an option given to the executors to let on redeemable ground-rent, which in point of fact they exercised, the case is not within the line of cases relied on. The direction to sell for cash must be absolute, unconditioned, in order to work a conversion. Here the executors had the discretion either to sell for cash or to convert the lot into real estate of a different kind. It follows that the decree of the learned Court below was right.

Decree affirmed and appeal dismissed at the costs of the appellant.